**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

RYAN O'DELL,                                          :
                                                      :
             Plaintiff,                               :    Civil Action No. 23-cv-8653
                                                      :
v.                                                    :    **COMPLAINT FOR VIOLATIONS OF**
                                                      :    **SECTIONS 14(a) AND 20(a) OF THE**
TABULA RASA HEALTHCARE, INC.                          :    **SECURITIES EXCHANGE ACT OF**
MICHAEL PURCELL, BRIAN ADAMS,                         :    **1934**
SAMIRA K. BECKWITH, DENNIS K.                         :
HELLING, RON MITCHELL, KATHY                          :    **JURY TRIAL DEMANDED**
O'BRIEN, DEREK SCHRIER, JONATHAN                      :
SCHWARTZ, and PAMELA SCHWEITZER,                      :
                                                      :
             Defendants.                              :
---------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against Tabula Rasa Healthcare, Inc. ("Tabula

Rasa or the "Company") and the members Tabula Rasa's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants") for their violations

of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed acquisition of Tabula Rasa by affiliates of Nautic Partners, LLC

("Nautic").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 18, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Locke Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Locke Buyer, LLC ("Parent"), will merge with and into Tabula Rasa, with Tabula Rasa surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 5, 2023 (the "Merger Agreement"), each Tabula Rasa stockholder will receive $10.50 in cash (the "Merger Consideration") for each Tabula Rasa share owned. Merger Sub and Parent are both affiliates of Nautic.

3.      As discussed below, Defendants have asked Tabula Rasa's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tabula Rasa's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Tabula Rasa stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Michael Purcell has served as a member of the Board since 2018 and is the Chairman of the Board.

11.     Individual Defendant Brian Adams has served as a member of the Board since 2023 and is the President and Chief Executive Officer of the Company.

12.     Individual Defendant Samira K. Beckwith has served as a member of the Board since 2017.

13.     Individual Defendant Dennis K. Helling has served as a member of the Board since 2017.

14.     Individual Defendant Ron Mitchell has served as a member of the Board since 2022.

15.      Individual Defendant Kathy O'Brien has served as a member of the Board since 2018.

16.     Individual Defendant Derek Schrier has served as a member of the Board since 2022.

17.     Individual Defendant Jonathan Schwartz has served as a member of the Board since 2022.

18.     Individual Defendant Pamela Schweitzer has served as a member of the Board since 2019.

19.     Defendant Tabula Rasa is a company that is incorporated pursuant to the laws of the State of Delaware and maintains its principal offices at 228 Strawbridge Drive, Suite 100, Moorestown, NJ 08057. The Company's stock trades on the NASDAQ Global Select Market under the symbol "TRHC."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.    <u>The Proposed Transaction</u>

22.     Tabula Rasa, operates as a healthcare technology company in the United States. The Company operates in two segments, CareVention HealthCare and MedWise HealthCare. It offers EireneRx, a cloud-based medication decision-support and e-prescribing platform to access patient medication-related information; and MedWise Risk Score, a medication risk stratification

technology for identification of patients in need of clinical intervention. The Company also provides TruChart that offers electronic health records (EHR), care coordination, and financial management in one program allowing Programs of All-Inclusive Care for the Elderly (PACE) to track measurable outcomes in defined timeframes for the populations they serve; and PACElogic, which delivers sharable workflows comprising EHR, customer relationship management, claims adjudication, electronic data interchange, care management, coordination and planning, integration with community-based providers, and various federal and state that requires reporting. In addition, it provides clinical pharmacist collaboration, prescription fulfillment and adherence packaging, and pharmacy benefit management services, as well as health plan management services, including risk adjustment and third-party administrator services. As of December 31, 2022, it served approximately 150 healthcare organizations. The Company provides cloud-based software applications to assist prescribers and pharmacists. Tabula Rasa was founded in 2009 and is headquartered in Moorestown, New Jersey.

23.     On August 7, 2023, the Company announced the Proposed Transaction:

MOORESTOWN, N.J., Aug. 7, 2023 /PRNewswire/ -- Tabula Rasa HealthCare, Inc.® ("TRHC," "Tabula Rasa" or the "Company") (NASDAQ: TRHC), a leading healthcare company advancing personalized, comprehensive care for value-based care organizations, today announced it has entered into a definitive agreement (the "Agreement") to be acquired by Nautic Partners ("Nautic") for $10.50 in cash per share and will combine with ExactCare Pharmacy ("ExactCare"), a portfolio company of Nautic. The all-cash transaction values Tabula Rasa at approximately $570 million, including net debt of approximately $262 million, on an enterprise value basis.

Under the terms of the Agreement, Tabula Rasa stockholders will receive $10.50 in cash for each share of common stock at the closing of the transaction, representing a premium of approximately 34% to Tabula Rasa's closing stock price on August 4, 2023, the last trading day prior to announcement.

Following the closing of the transaction, John Figueroa, ExactCare's current Executive Chairman, will assume the role of Chairman and CEO of the combined company. Tabula Rasa will continue operations in all of its locations, including Moorestown, New Jersey, and Brian Adams, Tabula Rasa's current President and Chief Executive Officer, will assume the role of President of the combined company. The combination brings together two preeminent healthcare companies whose pioneering work integrating comprehensive pharmacy services into population health has improved outcomes and reduced total cost of care for people with complex needs allowing them to thrive in home and community-based settings. Additionally, Tabula Rasa's technology-enabled solutions that individualize care to reduce risk, optimize efficacy and improve efficiency will help to make the combined companies' products and solutions more readily extendable into larger adjacent markets. This includes beneficiaries served by the Program of All-Inclusive Care for the Elderly (PACE), Medicare and Medicaid.

Mr. Adams commented: "Over the past year, Tabula Rasa has focused on developing and expanding partnerships with risk-bearing healthcare organizations responsible for serving people with the most complex care needs. This transaction leverages ExactCare's extensive experience partnering with providers and payers across the healthcare continuum and brings us together with a company whose culture, values and focus on optimizing patient care are aligned with our mission at Tabula Rasa. We look forward to bringing our teams and solutions together to expand how we partner with payers and providers to improve patient care."

Michael Purcell, Independent Board Chairman of Tabula Rasa, added: "The Board has worked closely with Brian and the team to position Tabula Rasa for value enhancing opportunities since its reconstitution in 2022. This transaction now provides our stockholders with a significant premium and liquidity – while also accelerating our investments in solutions that transform patient quality of life and improve the performance of our payer and provider clients."

Mr. Figueroa said: "Tabula Rasa has deep expertise managing care for the most vulnerable patients in our healthcare system and driving meaningful clinical and financial outcomes for the payers and providers that care for those patients. Combined with ExactCare's comprehensive long-term pharmacy care services that have served hundreds of thousands of people across the country, we will be even better positioned to put patients first to improve their health and wellness."

Marty Butler, President and Chief Financial Officer of ExactCare, concluded: "We see broad strategic alignment between Tabula Rasa and ExactCare. Our organizations provide unique but complementary solutions to address the healthcare challenges experienced by at-risk populations through innovative pharmacy and medication-related services. This partnership enables us to leverage each organization's strengths to enhance the value we deliver to our patients and partners."

**Transaction Approvals and Timing**

The Board of Directors (the "Board") of Tabula Rasa has unanimously approved the transaction. Additionally, Indaba Capital Management, L.P. ("Indaba"), the Company's largest stockholder with an approximately 25% equity stake, has entered into a voting and support agreement pursuant to which it has agreed to vote its shares of common stock in favor of the transaction as set forth therein.

The transaction is expected to close during the fourth quarter of 2023, subject to the satisfaction of customary closing conditions, including the receipt of stockholder and regulatory approvals. Following the closing of the transaction, Tabula Rasa will become a privately held company wholly owned by an affiliate of ExactCare and shares of Tabula Rasa common stock will no longer be listed on the Nasdaq stock exchange.

**Advisors**

Goldman Sachs & Co. LLC is acting as exclusive financial advisor to the Company and Cravath, Swaine & Moore LLP acted as the Company's legal advisor. Morgan, Lewis and Bockius LLP represented the management team of TRHC for this transaction.

Cantor Fitzgerald & Co. is acting as lead financial advisor and Centerview Partners is also acting as financial advisor to ExactCare and Nautic. Kirkland & Ellis LLP is acting as their legal advisor.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Tabula Rasa's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     <u>**The Materially Incomplete and Misleading Proxy Statement**</u>

25.     On September 18, 2023, Tabula Rasa filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

<u>*Omissions and/or Material Misrepresentations Concerning Financial Projections*</u>

26.     The Proxy Statement fails to provide material information concerning financial projections by Tabula Rasa management and relied upon by Goldman Sachs in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts in April and July 2023 (collectively, the "Company Projections") and provided them to the Board and Goldman Sachs with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Tabula Rasa management provided to the Board and Goldman Sachs. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

30.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a the unleveraged free cash flow and net operating losses and the underlying line items, the line items used to calculate the projected non-GAAP metrics, and reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

31.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the underlying line items to the Company's projected Unlevered Free Cash Flows; (ii) the inputs and assumptions underlying the EV/EBITDA exit multiples of 4.2x to 5.8x; (iii) the inputs and assumptions underlying the discount rates ranging from 13.0% to 15.5%; (iv) the inputs and assumptions underlying the perpetuity growth rates ranging from 2.5% to 3.5%; (v) the weighted cost of capital of the Company; (vi) the range of illustrative terminal values of the Company; (vii) the Company's net debt as of June 30, 2023; and (viii) the number of fully diluted outstanding shares of Company common stock.

32.     With respect to Goldman Sachs' *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for the companies selected by Goldman Sachs for the analysis; and (ii) the inputs and assumptions underlying the selection and application of the range of EV/LTM EBITDA multiples of 16.0x to 29.0x.

33.     With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed by Goldman Sachs; (ii) the premia of each transaction; and (iii) the inputs and assumptions underlying the reference range of illustrative premiums of 21.0% to 66.8%.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

37.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

39.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     The Individual Defendants acted as controlling persons of Tabula Rasa within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Tabula Rasa, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tabula Rasa, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tabula Rasa, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.      By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.      As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.      Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 2, 2023                    **MELWANI & CHAN LLP**

                              By:    */s/ Gloria Kui Melwani*
                              Gloria Kui Melwani (GM5661)
                              1180 Avenue of the Americas, 8th Fl.
                              New York, NY 10036
                              Telephone: (212) 382-4620
                              Email: gloria@melwanichan.com

                              *Attorneys for Plaintiff*